UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

REPORT AND RECOMMENDATION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Lance Gerald Milliman,

Plaintiff,

vs.

County of Stearns, Lowell
Rushmeyer, Connie Bauman,
Dennis Heinen, City of Kimball,
Cindy Stelten, Shelly Olson,
Andrew Maus, Dan Konz, John
Clement, Ron Daniels, Wayne
Mackereth, Michael Olk, Todd
Rohloff, Dianne Robinson,
Tamarack Court, Inc., Dale Wagner,
Gary Plamann, Dahrla Plamann,
Shadduck, Young & Brown;
Sheldon Brown; Iverson Reuvers,
Jason Hiveley, Neils, Franz &
Chirhart, Neil Franz, Meagher &
Geer, Steven Eggimann, Debra
Weiss, Erica Gutmann Strohl,
Edward Toussaint, Christopher
Dietzen, Paul Hoffman, and
Bernard Boland,

Defendants.          Civ. No. 05-2993 (JRT/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a special assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the Motion of Edward Toussaint ("Judge Toussaint"), Christopher Dietzen ("Judge Dietzen"), Paul Hoffman ("Judge Hoffman"), and Bernard Boland ("Judge Boland")(collectively, the "Judicial Defendants"), to Dismiss; the Motion of the law firm of Shadduck, Young & Brown, and Sheldon Brown ("Brown")(collectively, the "Brown Defendants"), to Dismiss; the Motion of the City of Kimball, Cindy Stelten ("Stelten"), Shelly Olson ("Olson"), Andrew Maus ("Maus"), Dan Konz ("Konz"), John Clement ("Clement"), Ron Daniels ("Daniels"), Wayne Mackereth ("Mackereth"), Michael Olk ("Olk"), Todd Rohloff ("Rohloff"), Diane Robinson ("Robinson")(collectively, the "City Defendants"), Iverson Reuvers, and Jason Hiveley ("Hiveley") to Dismiss; the Motion of the County of Stearns, Lowell Rushmeyer ("Rushmeyer"), Connie Bauman ("Bauman"), and Dennis Heinen ("Heinen")(collectively, the "County Defendants"), to Dismiss; and the Motion of Meagher & Geer, Steven Eggimann ("Eggimann"), Debra Weiss ("Weiss"), and Erica Gutmann Strohl ("Strohl")(collectively, the "Meagher Defendants"), to Dismiss.

-2-

A Hearing on the Motion was conducted on May 16, 2006, at which time, the Plaintiff appeared pro se; the Judicial Defendants appeared by John S. Garry, Assistant Minnesota Attorney General; the Brown Defendants appeared by Barbara A. Burke, Esq.; the City Defendants, Iverson Reuvers, and Hiveley, appeared by Jon K. Iverson, Esq.; the County Defendants appeared by Roger L. Rowlette, Esq.; and the Meagher Defendants appeared by Gary W. Hoch, Esq.  No appearances were made by, or on behalf of, any of the other parties.

For reasons which follow, we recommend that all of the Defendants' dispositive Motions be granted, and that the Plaintiff's claims against those Defendants be dismissed in their entirety.

## II.  Factual Background

The Plaintiff commenced this action under Title 42 U.S.C. §1983, alleging that the Defendants violated his rights under the United States and Minnesota Constitutions, and that they conspired for the purpose of depriving him of his Federal constitutional rights.  The events which give rise to the Plaintiff's claim pertain to the Plaintiff's dealings with Rohloff, who is the Chief of Police for the City of Kimball, and to the eviction of the Plaintiff, from Lot 18 of the Tamarack Court, Inc.

-3-

Manufactured Home Park (the "Park"), as well as the subsequent removal of his manufactured home from that Park.

According to the Plaintiff's Complaint, the City of Kimball is alleged to have had  an official policy or custom of allowing Rohloff to conduct property inspections at the Park, pursuant to a City Ordinance against the accumulation of waste.  The Plaintiff contends that those searches first began in 1998, and that, under the policy, two (2) inspections actually occurred.  Specifically, the Plaintiff asserts that one inspection was conducted by members of the Kimball City Council, while the other was conducted by Rohloff.  Complaint, at ¶5.  The Defendants Olson, Maus, Konz, Clement, Daniels, Mackereth, and Olk, are alleged to have been members of the Kimball City Council, while Stelten is alleged to have been the Mayor, during the pertinent time periods.

The Plaintiff further alleges that, on October 31, 1999, he transmitted a letter to the City of Kimball, in which he advised the City of potentially harassing conduct against him by Rohloff.  The City Clerk, who the Plaintiff identifies as Robinson, provided the Plaintiff a form that he could use to file a complaint against Rohloff.  The Plaintiff did not complete the form, apparently because he learned that Brown would be reviewing his Complaint.  According to the Plaintiff, the Defendant law firm of

-4-

Shadduck, Young & Brown, was contracted by the City of Kimball to act as the City Attorney, and his prior dealings with that firm lead him to believe that his grievance would not receive fair consideration.  Id. at ¶6.

The Complaint further alleges that, sometime in the early to middle part of 2000, the Kimball City Council, and Rohloff, began meeting with the Defendant Dale Wagner ("Wagner"), who is the owner of the Defendant Tamarack Court, Inc. (collectively the "Tamarack Defendants"), as well as Rushmeyer, who is an official with the Stearns County Environmental Services Department, Bauman, who is an official with the Stearns County Emergency Management Department, and Heinen, who is a Stearns County Deputy Sheriff.  Allegedly, the purpose of those meetings concerned the construction of a storm shelter in the Park.  The Plaintiff maintains that, at some point, those Defendants determined that the storm shelter should be constructed on Lot 18, which is where the Plaintiff's manufactured home was located and, as a result, he began to experience harassment from Wagner, Rohloff, the County Defendants, and the other residents of the Park.  Complaint, at ¶7.

In April of 2002, the Plaintiff informed Stearns County that the septic system for Lot 18 was not working properly.  See, Tamarack Court, Inc. v. Milliman, 2003 WL 21911150 at *1 (Minn. App., August 12, 2003).  In response to that report,

Rushmeyer inspected the septic system, and determined that it could not be repaired. As a consequence, he transmitted a notice to the Tamarack Defendants that the system would either have to be replaced, or the manufactured homes, which were on sites served by that septic system, would have to be removed.  Id.; see, Complaint, at ¶4. In response to the directive of Stearns County, Wagner apparently determined that it would not be economical to replace the septic system, and instead, he decided to construct a storm shelter on Lot 18.  Id.  Assertedly, Bauman violated the Plaintiff's constitutional rights when she began meeting with Wagner concerning the construction of the shelter.  Complaint, at ¶4.

On May 31, 2002, Rohloff served a Notice of Termination of Tenancy on the Plaintiff.  The stated reason for the termination was the failing septic system, which the Plaintiff contends that Wagner deliberately caused.  Complaint, at ¶8. Subsequently, on September 2, 2002, the Plaintiff filed a report with the Stearns County Sheriff's Department, in which he claimed that Wagner, with the assistance of another unknown party, sprayed expanding foam insulation into the Plaintiff's septic tank.  Allegedly, the Stearns County Sheriff's Department, including Heinen, failed to take action on the Plaintiff's complaints, as did the Kimball City Attorney.  Complaint, at ¶¶4 and 9.

The Plaintiff did not vacate his lot and, after ninety (90) days, the Tamarack Defendants commenced an eviction action in Minnesota State Court.  See, Tamarack Court, Inc. v. Milliman, supra at *1.  The eviction action proceeded to a Bench Trial, where Rushmeyer and Bauman both testified on behalf of Tamarack, Inc.  Following the Trial, the Court issued a Writ of Recovery of the premises, and an Order to Vacate, which it stayed until October 15, 2002.  Id. at *2.  The Plaintiff appealed the Order to the Minnesota Court of Appeals, which affirmed the decision of the District Court.  See, Tamarack Court v. Milliman, supra.  The Plaintiff now alleges that the Court's Order was based on fraudulent testimony.  Complaint, at ¶4.

On October 15, 2002, Rohloff served the Plaintiff with the Writ of Recovery, on behalf of the Tamarack Defendants, which directed the Plaintiff to vacate the premises within twenty-four (24) hours.   The Plaintiff vacated the premises, but his manufactured home remained on the Lot.  The Plaintiff contends that two (2) other lots -- Lots 14 and 9 -- were available within the Park, as of June 1, 2002, but that he was denied the opportunity to relocate his manufactured home to those lots when Wagner, Gary Plamann ("Plamann"), and Dahrla Manders ("Manders"), signed fraudulent leases to eliminate the availability of those lots.  The Plaintiff further alleges that those acts were performed at the direction of Brown, who was allegedly acting as legal counsel

to the Tamarack Defendants.  The Plaintiff contends that, by not allowing him to move

his home to one of the available lots, Wagner, Plamann, Manders, and Brown, violated

Minnesota Statutes Section 327C.09, Subdivision 8.[1]  Id. at ¶10.

On November 1, 2002, Brown transmitted a letter to the Plaintiff, in which he

advised the Plaintiff that the Tamarack Defendants would store the Plaintiff's mobile

home on the premises for ninety (90) days, at which time, it would be auctioned to the

highest bidder.  The Plaintiff alleges that he subsequently transmitted a letter to Brown,

by facsimile on December 2, 2002, in which he expressed his desire to move his

manufactured home to Lot 14.  Id. at ¶11.  On December 18, 2002, the Plaintiff

---

[1]Minnesota Statutes Section 327C.09, Subdivision 8, sets forth one of the
circumstances upon which the owner of a manufactured home park may recover the
land upon which a manufactured home sits, and provides as follows:

> The park owner has specific plans to make improvements
> to the park premises which will substantially benefit the
> health and safety of the residents or have been ordered by
> a government agency, and which necessitate removal of the
> resident's manufactured home from the park. The park
> owner must give the resident 90 days' written notice and
> include in that notice a statement identifying how the
> improvements will substantially benefit the health and safety
> of the residents. If another lot is available in the park, the
> park owner must allow the resident to relocate the home to
> that lot unless the home, because of its size or local
> ordinance, is not compatible with that lot.

complained to the Stearns County Sheriff's Department that his manufactured home was being torn apart by Wagner.  The complaint was apparently transferred from the Stearns County Sheriff's Department to the Kimball Police Department, where it was handled by Rohloff.  Allegedly, Rohloff contacted the Plaintiff, and advised him that he intended to contact Brown before taking any action.  Rohloff contacted the Plaintiff on the day after their initial conversation, at which time, he informed the Plaintiff that Brown had advised him that Wagner was authorized to tear apart the Plaintiff's manufactured home in order to remove it from the Park.  Id. at ¶12.

Based on the alleged contract between the City of Kimball, and the law firm of Shadduck, Young & Brown, and Brown's alleged concurrent representation of the Tamarack Defendants, the Plaintiff alleges that Brown, in collusion with the other Defendants, used his law firm to further the interests of the Tamarack Defendants, and to intimidate the Plaintiff from exercising his constitutional rights.  The Plaintiff further contends that the Brown Defendants' conduct should be subject to discipline, under Minnesota Statutes Section 481.15, Subdivisions 2 and 4, and Rule 8.4(d), (g), and (h), Minnesota Rules of Professional Conduct.  Id. at ¶11.

The Plaintiff acknowledges that, "[t]his 42 U.S.C. 1983 matter was originally before the courts of the State of Minnesota in Stearns County District Court."

Complaint, at ¶13.   During those proceedings, the Kimball Defendants were represented by Hiveley, who is an attorney with the law firm of Iverson Reuvers; Brown was represented by the Meagher Defendants; and the Tamarack Defendants were represented by the Defendant Neil Franz of the law firm of Neils, Franz & Chirhart.

However, following a series of adverse rulings, in which Judgments were entered in favor of the Kimball Defendants, the Brown Defendants, and the Tamarack Defendants, the Plaintiff filed the pending action in Federal Court. The Plaintiff asserts that the actions of the Judicial Defendants, who are each State Court Judges, as well as the attorneys that were involved in the State Court proceedings, forced him to "remove" his action from State Court to Federal Court.   Specifically, the Plaintiff contends that the attorneys, who were involved in the State proceedings, conspired to withhold material evidence, in violation of Minnesota law, and the Minnesota Rules of Professional Conduct, and that they also conspired with the Judicial Defendants to deprive the Plaintiff of his Federal Constitutional rights.   The Plaintiff explicitly characterizes his action as "a removal action, and not an appeal of the ruling of the State of Minnesota," because, he contends, "he did not receive a fair trial * * * [or] a full and fair opportunity to be heard in the Minnesota courts."  Id. at ¶22.

The following is a summary of the State Court proceedings in this matter:

1.　　On October 7, 2002, the Stearns County District Court, the Honorable Vicki E. Landwehr ("Judge Landwehr") presiding, entered a Judgment in favor of the Tamarack Defendants, in an eviction action against the Plaintiff.  See, Affidavit of J. Richard Bland, at Exh. A.

2.　　On February 2, 2003, the Plaintiff filed a Section 1983 action in State Court against the Kimball Defendants, the Tamarack Defendants, the Brown Defendants, and the City Defendants, with the exception of Robinson,[2] as well as against several other individuals and entities which are not named in this suit.  See, Complaint filed in Stearns County District Court, Court File No. C7-03-794 ("Plaintiff's State Court Complaint"), Affidavit of Barbara A. Burke ("Burke Aff."), at Exh. B.  The subject matter of the Plaintiff's State Court Complaint appears to be the same as the pending Federal action -- namely, Rohloff's alleged searches of the Defendant's property in 1998, and the Plaintiff's eviction from Lot 18 in the Park.

---

[2]Based upon our review of the State Court pleadings, it does not appear that Robinson, who is identified as the Clerk for the City of Kimball, was named as a party to the State Court action.

Compare, Plaintiff's State Court Complaint, at ¶¶5, 8, 9, 11, 12, 15, 16, 18-22, with

Complaint, at ¶¶5-12.

       3.     On August 12, 2003, the Minnesota Court of Appeals affirmed the

Order of the District Court in the eviction action.  See, Tamarack Court, Inc. v.

Milliman, supra.

       4.     On June 17, 2003, the Stearns County District Court, the

Honorable Richard J. Ahles presiding, denied a Motion to Dismiss by the Brown

Defendants,[3] and granted Motions to Dismiss by several individuals who are not

named as Defendants in the present action.  Affidavit of John Garry, at Exh. A.

       5.     On April 20, 2004, Judge Hoffmann, who, at that time, was a Judge

with the Stearns County District Court, granted Motions for Summary Judgment in

favor of the City Defendants, with the exception of Rohloff, as well as the Tamarack

Defendants, and the Brown Defendants.  Id. at Exh. B.  Summary Judgment was

denied with respect to Rohloff because the Court determined that genuine issues of

material fact remained concerning whether Rohloff had entered onto the Plaintiff's

---

[3]The Court granted the Motion with respect to two attorneys from the law firm of Shadduck, Young & Brown, who are not named in the present action, but denied the Motion in all other respects.

private property, and illegally searched the property, in violation of the Plaintiff's Fourth Amendment rights.   Id.   The Court also found that the Plaintiff had not provided sufficient evidence of a conspiracy to withstand Summary Judgment.

6.     On April 28, 2004, Judge Hoffman amended his Order of April 20, 2004, to reflect that final Judgment be entered against the Brown Defendants.   Id. at Exh. C.

7.     On August 6, 2004, Judge Hoffman denied a Motion by the Plaintiff to Amend his Complaint in order to add a conspiracy claim against Judge Landwehr, the Tamarack Defendants, and Brown, arising from their conduct during the prior eviction action; a claim that the Defendants conspired to take his home and destroy it; and a claim that Hiveley, the Meagher Defendants, and Franz, concealed information from the Minnesota Lawyers Board of Professional Responsibility.   In that Order, the Court also denied Motions by the Plaintiff for Reconsideration, and to reassign the case to a different District Court Judge.   Id. at Exh. D.

8.     On September 13, 2004, Judge Landwehr denied the Plaintiff's Motion to remove Judge Hoffman from the case.   Id. at Exh. E.

9.     On September 14, 2004, a Jury was empaneled for a Trial on the Plaintiff's claims against Rohloff, who was the only Defendant remaining in the case

-13-

following Summary Judgment.  Id. at Exh. F.  Apparently, the Plaintiff requested a

continuance, which was granted, and the Trial commenced on September 15, 2004.

Following opening statements, the Plaintiff was directed to call his first witness.  The

Plaintiff advised the Court that he intended to take the stand, and to introduce a

number of Exhibits.  The Jury was briefly excused, in order to mark the Plaintiff's

Exhibits, and to allow for argument on the relevance of the proffered Exhibits.

Hiveley, who was acting as counsel for Rohloff, objected to the relevance of

certain Exhibits that were proffered to prove the state of mind of Rohloff during an

incident in June of 1999.  The Court sustained the objection, and the Plaintiff refused

to proceed with his case.  Id.  In response to the Plaintiff's refusal, Judge Hoffman

advised the Plaintiff that his refusal to proceed would result in a dismissal with

prejudice, and he explained to the Plaintiff the effect of such an Order.  Id. at Exh. P.

Nonetheless, the Plaintiff persisted in his refusal to proceed, and the Court dismissed

all of the Plaintiff's claims with prejudice.  Id. at Exh. F.

10.    On November 18, 2004, the Plaintiff filed an appeal with the

Minnesota Court of Appeals.  Id. at Exh. G.

11.    On December 9, 2004, Judge Toussaint, who is the Chief Judge

of the Minnesota Court of Appeals, issued an Order which directed the Plaintiff to

submit Trial transcripts.  The Court further noted that the State District Court had not resolved the Motion of the Plaintiff to proceed in forma pauperis ("IFP") on appeal. Id.

12.     On December 17, 2004, Judge Hoffman issued a standard grant of the Plaintiff's IFP application.  The Order specifically provided that, "[b]ased on the affidavit of the applicant and the authority of [Minnesota Statutes Section] 563.01, the Court FINDS: The applicant's claims are not frivolous and applicant is indigent and is entitled to proceed in forma pauperis."  However, the Order contained no provision for the payment of Trial transcripts.  Id. at Exh. H.

13.     On January 14, 2005, Judge Toussaint directed the Plaintiff to file a Transcript Certificate by January 25, 2005.  Id. at Exh. I.

14.     On January 21, 2005, Judge Hoffman recused himself from the case because the Plaintiff had "indicated his extreme displeasure of me in open Court, " and "[t]his caused me to become prejudiced."  Id. at Exh. J.

15.     In recognition of the absence of language in the initial grant of the Plaintiff's IFP application, concerning the payment of transcript fees, and the pendency of a supplemental application of the Plaintiff for the payment of transcript expenses, the Plaintiff was twice afforded extensions of time by the Minnesota Court

of Appeals to provide a transcript.  Id. at Exhs. K and M.  By Order of February 23, 2005, Judge Toussaint further directed the Trial Court to issue a ruling on the Plaintiff's request for the payment of transcript expenses.  Id. at Exh. M.

16.    On February 23, 2005, Judge Boland, who is a Judge with the Stearns County District Court, denied the Plaintiff's request for the payment of Trial transcripts.  Id. at N.

17.    On March 14, 2005, the Minnesota Court of Appeals remanded the Plaintiff's Motion to proceed IFP, and to obtain transcripts, upon the failure of the State District Court to set forth "the reasons for the denial."  The Court of Appeals further directed the attention of the Trial Court to the previous grant of the Plaintiff's Motion to proceed IFP.  Id. at Exhibit O.

18.    On remand, Judge Boland denied the Plaintiff's Motion to proceed IFP.  In so ruling, the Court determined that the Plaintiff's appeal was frivolous because of his refusal to proceed at Trial, following the Court's ruling on the admissibility of certain Exhibits.  The Court also submitted an Affidavit that was prepared by Judge Hoffman, in which he averred, in pertinent part, as follows:

> I do not have the District Court file to review, but in the event I signed an Order commenting on the merits of the Plaintiff's appeal, or made a finding that the instant appeal

> was not frivolous, it was wholly inadvertent on my part.  If
> I signed such an Order, I intended only to address
> plaintiff's financial circumstances and not the merits of his
> appeal.

Id. at Exh. P.

19.     On March 24, 2005, Judge Dietzen, who is a Judge with the

Minnesota Court of Appeals, affirmed the denial of the Plaintiff's Motion to proceed

IFP on appeal, and directed the Plaintiff to pay the Clerk's filing fee; to post a cost

bond with the District Court administrator; and to file completed Certificates of

Transcript, by no later than April 4, 2005.  The Plaintiff was further advised that his

failure to comply with the Order would result in the dismissal of his appeal.  Id. at Exh.

Q.

20.     As a result of the Plaintiff's failure to comply with the Court of

Appeals' Order of March 24, 2005, Judge Toussaint dismissed the Plaintiff's appeal

on April 13, 2005.  Id. at Exh. R.

21.     On July 19, 2005, after addressing several procedural matters, see,

id., at Exhs. S and T, the Minnesota Supreme Court denied the Plaintiff's Petition for

Review.  Id. at Exh. U.

The Plaintiff has alleged a number of deficiencies in those proceedings, and

especially in those that were presided over by Judge Hoffman.  Specifically, the

-17-

Plaintiff alleges that he filed Motions to Compel Discovery, and to Amend his Complaint, which were never ruled upon by the Judge Hoffman; that Judge Hoffman failed to respond to correspondence from the Plaintiff; that Judge Hoffman ignored a Motion by the Plaintiff to hold Hiveley, and the City Defendants, in contempt; that Judge Hoffman improperly declined to issue approximately fifteen (15) Subpoenas until less than one (1) day before Trial; that Judge Hoffman engaged in ex parte communications with a representative of the Stearns County Sheriff's Department concerning a Subpoena that had been issued to Heinen, and concerning the types of evidence that should be provided under the Subpoena; and that Judge Hoffman waited until ten (10) days before Trial to compel Hiveley to disclose his file to the Plaintiff, but that the Order was ignored by Hiveley.  Complaint, at ¶¶13-16.

The Plaintiff has also alleged a number of legal errors in the rulings of Judge Hoffmann.  Specifically, the Plaintiff alleges that Judge Hoffman's Order of April 20, 2004, was an attempt to force him to accept a Minnesota State Civil Rights remedy that conflicted with his Federal Constitutional rights; that Judge Hoffman's Order of April 20, 2004, was improper given the "overwhelming evidence that a conspiracy existed between these defendants," which he has identified as the evidence that was allegedly withheld by Hiveley; and that Judge Hoffman used the wrong standard of

review in his consideration of the Defendants' Motions in the State Court action. <u>Complaint</u>, at ¶¶13-14.  The Plaintiff also asserts that Judge Hoffman improperly sustained objections to the admission of certain evidence which, according to the Plaintiff, had previously been determined to be admissible.  <u>Id.</u> at ¶17.

The Plaintiff further alleges errors in the subsequent rulings of Judge Boland, as well as those of Judge Toussaint, and Judge Dietzen, on appeal.  Specifically, the Plaintiff alleges that Judge Boland's Orders, which denied the Plaintiff's Motions for leave to proceed IFP, were "arbitrary and capricious" in that Judge Boland committed legal error by considering the exchange between Judge Hoffman and the Plaintiff, where the Plaintiff refused to proceed with his case, as well as the Affidavit of Judge Hoffman.  <u>Id.</u> at 18-20.  According to the Plaintiff, Judge Toussaint arbitrarily and capriciously allowed Judge Dietzen to consider his appeal, and that Judge Dietzen's dismissal of his appeal was arbitrary and capricious.  <u>Id.</u> at 21.

The Plaintiff claims that the actions of the Judicial Defendants violate Canons 1, 2A, 3A, Subdivisions 1, 2, and 5, 3B, Subdivision 1, and 3D, Subdivision 1, of the Minnesota Code of Judicial Conduct, and demonstrate a conspiracy to violate his rights.  The Plaintiff further contends that the conduct of the Defendants caused him severe insomnia, severe emotional distress, severe depression, and acid reflux, as well

as contributing to his financial ruin.   Id. at ¶23.   As a result, the Plaintiff seeks a

declaration that the actions of the Defendants violated the Plaintiff's Federal

Constitutional rights, in that they "deprived the plaintiff of a full opportunity to be

heard, a fair trial and access to the courts, including the appellate courts." Complaint,

"Nature of Action," at unnumbered page 1.

The Plaintiff also requests that we recommend to the United States Attorney that

the Defendants be prosecuted under the Racketeering Influenced and Corrupt

Organizations Act, Title 18 U.S.C. §1961 et seq.; that we recommend to the Minnesota

Board of Judicial Conduct, and the Minnesota Lawyers Professional Responsibility

Board, that the Judicial Defendants be removed from the bench, sanctioned, and

disbarred from the practice of law; and that those Defendants who are attorneys also

be disbarred and punished.   The Plaintiff further seeks money damages from all of the

Defendants, with the exception of the Judicial Defendants.

## III.  Discussion

The Judicial Defendants, the Brown Defendants, the City Defendants, Hiveley,

and Iverson Reuvers, the County Defendants, and the Meagher Defendants, have each

filed Motions to Dismiss.   The Judicial Defendants, the Brown Defendants, and the

City Defendants, Hiveley, and Iverson Reuvers, have each urged that we dismiss the

claims against them, pursuant to Rule 12(b)(1), Federal Rules of Civil Procedure, while all of the Defendants have urged that we dismiss the Plaintiff's claims under Rule 12(b)(6), Federal Rules of Civil Procedure.

A party may challenge a Court's subject matter jurisdiction at any time, under Rule 12(b)(1), Federal Rules of Civil Procedure, since such a defense may not be waived. See, Moubry v. Independent School District No. 696, 951 F. Supp. 867, 882 (D. Minn. 1996), citing Northwest Airlines, Inc. v. Transport Workers, 451 U.S. 77, 95 (1981); Bueford v. Resolution Trust Corp., 991 F.2d 481, 485 (8th Cir. 1993) ("Lack of subject matter jurisdiction * * * cannot be waived[;] [it] may be raised at any time by a party to an action, or by the court sua sponte."). "In order to properly dismiss an action under Rule 12(b)(1), the challenging party must successfully attack the Complaint, either upon its face or upon the factual truthfulness of its averments." Moubry v. Independent School Dist. No. 696, supra at 882, citing Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993); Osborn v. United States, 918 F.2d 724, 729 n. 6 (8th Cir. 1990).

If the defendant brings a facial challenge -- a challenge that, even if truthful, the facts alleged in a Complaint are insufficient to establish jurisdiction -- the Court reviews the pleadings alone, and "the non-moving party [is afforded] the same

protections that it would receive under a Rule 12(b)(6) motion to dismiss." <u>Carlson</u>

<u>Holdings, Inc. v. NAFCO Ins. Co.</u>, 205 F. Supp.2d 1069, 1073 (D. Minn. 2001),

citing <u>Titus v. Sullivan</u>, supra at 593; <u>Osborn v. United States</u>, supra at 729 n. 6.

Accordingly, "[t]he court presumes that all of the factual allegations in the complaint

concerning jurisdiction are true and will not dismiss the claims unless the plaintiff fails

to allege an essential element for subject matter jurisdiction." <u>Id.</u>

     However, in factual challenges to subject matter jurisdiction -- contending that

the allegations in the Complaint, that are to establish jurisdiction, are insufficiently

supported by the facts -- the Court "may consider matters outside the pleadings and

the non-moving party does not benefit from the safeguards of 12(b)(6)." <u>Id.</u>  When

a plaintiff's "'allegations of jurisdictional facts are challenged by his adversary in any

appropriate manner, he must support them by competent proof," "[a]nd * * * for that

purpose the court may demand that the party alleging jurisdiction justify his allegations

by a preponderance of the evidence.'" <u>Zunamon v. Brown</u>, 418 F.2d 883, 886 (8th

Cir. 1969), quoting <u>McNutt v. General Motors Acceptance Corp.</u>, 298 U.S. 178, 189

(1936).

     When reviewing a Rule 12(b)(6) dismissal for failure to state a claim, we look

only to the facts alleged in the complaint and construe those facts in the light most

favorable to the [nonmoving party]."  Riley v. St. Louis County, 153 F.3d 627, 629

(8th Cir. 1998), cert. denied, 525 U.S. 1178 (1999), citing Double D Spotting Serv.,

Inc. v. Supervalu, Inc., 136 F.23d 554, 556 (8th Cir. 1998); see also, Maki v. Allete,

Inc., 383 F.3d 740, 742 (8th Cir. 2004).  In addition, all reasonable inferences, from the

facts alleged in the Complaint, must also be drawn in favor of the nonmoving party.

Maki v. Allete, Inc., supra at 742.  "A complaint shall not be dismissed for its failure

to state a claim upon which relief can be granted unless it appears beyond a reasonable

doubt that plaintiff can prove no set of facts in support of a claim entitling him to

relief."   Young v. City of St. Charles, 244 F.3d 623, 627 (8th Cir. 2001), citing

Breedlove v. Earthgrains Baking, 140 F.3d 797, 799 (8th Cir. 1998); see also, Maki v.

Allete, supra at 742; Helleloid v. Independent School Dist. No. 361, 149 F. Supp.2d

863, 866-67 (D. Minn. 2001).

"Nevertheless, dismissal under Rule 12(b)(6) serves to eliminate actions which

are fatally flawed in their legal premises and designed to fail, thereby sparing litigants

the burden of unnecessary pretrial and trial activity."   Young v. City of St. Charles,

supra at 627, citing Neitzke v. Williams, 490 U.S. 319, 326-27 (1989).  "To avoid

dismissal, a complaint must allege facts sufficient to state a claim as a matter of law

and not merely legal conclusions." Id., citing Springdale Educ. Ass'n v. Springdale Sch. Dist., 133 F.3d 649, 651 (8th Cir. 1998).

A Motion to Dismiss can be converted to a Rule 56 Motion for Summary Judgment if "matters outside the pleadings are presented to and not excluded by the court." Rule 12(b), Federal Rules of Civil Procedure. However, a Court may consider some information, which is not contained within the Complaint -- such as materials that are part of the public record, and materials that are necessarily embraced by the pleadings -- without transforming the Motion into one for Summary Judgment. Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999); see, Enervations, Inc. v. Minnesota Mining and Manufacturing Co., 380 F.3d 1066, 1069 (8th Cir. 2004); Stahl v. United States Department of Agriculture, 327 F.3d 697, 700 (8th Cir. 2003). Since our decision rests entirely upon the pleadings, materials within the public record, and materials that are necessarily embraced by the pleadings, we analyze the Defendants' Motion under the framework of Rule 12(b)(6), rather than under the regimen of Rule 56. With these precepts in mind, we turn to the Defendants' Motions.[4]

---

[4]In our resolution of the Defendants' Motions, we have considered the Judicial
(continued...)

-24-

A.     <u>The Judicial Defendants' Motions to Dismiss</u>.

As noted, Judge Hoffman and Judge Boland are, or were, State District Court Judges, while Judge Toussaint, and Judge Dietzen, are both Judges on the Minnesota Court of Appeals.   Each of the Defendant Judges issued judicial rulings that were adverse to the Plaintiff's litigation posture in the State Court proceedings. Additionally, Judge Hoffman filed an Affidavit, which supported, in part, a ruling that was adverse to the Plaintiff.

The Judicial Defendants contend that the Plaintiff's claims against them must be dismissed because Federal Subject Matter Jurisdiction is lacking under the <u>Rooker/Feldman</u> doctrine, see, <u>Rooker v. Fidelity Trust Co.</u>, 263 U.S. 413, 416 (1923); <u>District of Columbia Court of Appeals v. Feldman</u>, 460 U.S. 462, 476 (1983),

---

[4](...continued)
Opinions, which were issued by the Minnesota State Courts in their disposition of the eviction action against the Plaintiff, as well as the Plaintiff's State Court civil rights action.   Our consideration of those materials does not convert the Defendants' Motions into ones for Summary Judgment since, under the law of this Circuit, a Court "may take judicial notice of judicial opinions," see, <u>Stutzka v. McCarville</u>, 420 F.3d 757, 761 n. 2 (8th Cir. 2005); see also, <u>Stahl v. United States Department of Agriculture</u>, 327 F.3d 697, 700 (8th Cir. 2003)(taking judicial notice of public records, and considering such materials in a Motion to Dismiss).

and alternatively, because the Plaintiff has failed to state a claim upon which relief can be granted. We address each of those contentions, in turn.

1.     The Rooker/Feldman Doctrine.  As established by the Rooker/ Feldman doctrine, Federal Courts do not possess subject matter jurisdiction over challenges to State Court decisions in judicial proceedings.  See, Rooker v. Fidelity Trust Co., supra at 416; District of Columbia Court of Appeals v. Feldman, supra at 476; Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 283 (2005); see also, Lemonds v. St. Louis County, 222 F.3d 488, 492 (8th Cir. 2000); Bechtold v. City of Rosemount, 104 F.3d 1062, 1065 (8th Cir. 1997).  With minor exceptions, which do not apply here, the Federal review of a State Court determination may only be obtained in the United States Supreme Court.  See, District of Columbia Court of Appeals v. Feldman, supra at 476, citing Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Engineers, 398 U.S. 281, 296 (1970); Charchenko v. City of Stillwater, 47 F.3d 981, 983 (8th Cir. 1995); see also, Title 28 U.S.C. §1257.

The Supreme Court, in Feldman, formulated a general rule which distinguishes general constitutional challenges to State laws and regulations -- over which the Federal Courts have jurisdiction -- from requests for review of specific State Court decisions, over which they have no jurisdiction.  As explained by the Court, when the Federal

-26-

claims are "inextricably intertwined with" State Court "decisions, in judicial proceedings," they fall outside of the Federal Court's jurisdiction.   District of Columbia Court of Appeals v. Feldman, supra at 486-87.

Recognizing that lower Courts have construed the Rooker/Feldman doctrine "to extend far beyond the contours of the Rooker and Feldman cases," the Supreme Court recently clarified that the Rooker/Feldman doctrine is "confined to cases of the kind from which the doctrine acquired its name:   cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Industries Corp., supra at 284; see, Lance v. Dennis, --- U.S. ---, 126 S.Ct. 1198, 1199 (2006); Dornheim v. Sholes, 430 F.3d 919, 923 (8th Cir. 2005), cert. denied, --- U.S. ---, 126 S.Ct. 2031 (2006).  Under this framework, the Rooker/Feldman doctrine will only apply in those instances where "the federal suit is commenced after the state court proceedings have ended." Dornheim v. Sholes, supra at 923.

In reaching its holding, the Supreme Court, in Exxon-Mobil, observed that the "[d]isposition of the federal action, once the state-court adjudication is complete, would be governed by preclusion law," and that "[p]reclusion, of course, is not a

jurisdictional matter." Id. at 293. Accordingly, "[i]f a federal plaintiff 'present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party * * *, then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." Id., quoting, GASH Associates v. Village of Rosemont, 995 F.2d 726, 728 (7th Cir. 1993); accord Noel v. Hall, 341 F.3d 1148, 1163-64 (9th Cir. 2003). Since deciding Exxon-Mobil, the Supreme Court has further reiterated that "Rooker-Feldman is not simply preclusion by another name," and "[i]ncorporation of preclusion principles into Rooker-Feldman risks turning that limited doctrine into a uniform federal rule governing the preclusive effect of state-court judgments, contrary to the Full Faith and Credit Act." Lance v. Dennis, supra at 1202-03 [emphasis in original].

In the wake of the Supreme Court's decisions in Exxon-Mobil and Lance, several Circuit Courts of Appeals have reexamined their Rooker-Feldman jurisprudence. Those Courts have invariably determined that the doctrine is limited to situations where the plaintiff seeks redress for injuries that were caused by a State Court Judgment. See, McCormick v. Braverman, 451 F.3d 382, 392 (6th Cir. 2006); Turner v. Crawford Square Apartments III, L.P., 449 F.3d 542, 547 (3rd Cir. 2006); Bolden v. City of Topeka, 441 F.3d 1129, 1145 (10th Cir. 2006); Davani v. Virginia

-28-

Department of Transportation, 434 F.3d 712, 718 (4th Cir. 2006); Hoblock v. Albany

County Board of Elections, 422 F.3d 77, 87 (2nd Cir. 2005); Galibois v. Fisher, 2006

WL 827326 at *1-2 (1st Cir., March 31, 2006); see also, Noel v. Hall, supra at 1163;

Jensen v. Foley, 295 F.3d 745, 747-48 (7th Cir. 2002).

Indeed, the Court of Appeals for the Second Circuit has determined that the

requirement set forth in Exxon-Mobil, that "federal plaintiffs are not subject to the

Rooker-Feldman bar unless they complain of an injury caused by a state judgment *

* * is the core requirement from which others derive." Hoblock v. Albany County

Board of Elections, supra at 87 [emphasis in original].  In reaching this conclusion, the

Court explained, as follows:

> First, this requirement explains why a federal plaintiff cannot
> escape the Rooker-Feldman bar simply by relying on a legal
> theory not raised in state court.  Suppose a state court,
> based purely on state law, terminates a father's parental
> rights and orders the state to take custody of his son. If the
> father sues in federal court for the return of his son on
> grounds that the state judgment violates his federal
> substantive due-process rights as a parent, he is
> complaining of an injury caused by the state judgment and
> seeking its reversal.  This he may not do, regardless of
> whether he raised any constitutional claims in state court,
> because only the Supreme Court may hear appeals from
> state-court judgments.

> Further, by focusing on the requirement that the state-court judgment be the source of the injury, we can see how a suit asking a federal court to "den[y] a legal conclusion" reached by a state court could nonetheless be independent for Rooker-Feldman purposes. Suppose a plaintiff sues his employer in state court for violating both state anti-discrimination law and Title VII and loses. If the plaintiff then brings the same suit in federal court, he will be seeking a decision from the federal court that denies the state court's conclusion that the employer is not liable, but he will not be alleging injury from the state judgment. Instead, he will be alleging injury based on the employer's discrimination. The fact that the state court chose not to remedy the injury does not transform the subsequent federal suit on the same matter into an appeal, forbidden by Rooker-Feldman, of the state-court judgment.

Id. at 87-88.

Given these precepts, the "inextricably intertwined" language set forth in Feldman "does not create an additional legal test for determining when claims challenging a state-court decision are barred, but merely states a conclusion: if the state court loser seeks redress in the federal district court for the injury caused by the state court decision, his federal claim is, by definition, 'inextricably intertwined' with the state court decision, and is therefore outside of the jurisdiction of the federal district court."

Davani v. Virginia Department of Transportation, supra at 719.

While our Court of Appeals has yet to address the requirement set forth in Exxon-Mobil, that a plaintiff's claim seek redress for an injury that was caused by a

-30-

State Court Judgment, a Court in this District recently determined that the <u>Rooker/</u><u>Feldman</u> doctrine was inapplicable where "the injury allegedly experienced by [the plaintiff] comes not from a state-court judgement."  See, <u>Fearing v. City of Lake St.</u><u>Croix Beach</u>, 2006 WL 695548 at *5 (D. Minn., March 17, 2006); see also, <u>Bracht v.</u><u>Grewshusky</u>, 2005 WL 2234578 at *4-5 (E.D. Mo., September 14, 2005)(<u>Rooker-</u><u>Feldman</u> did not apply where the Federal plaintiff did not allege "an injury caused by the state court decision," or "seek relief from the state court judgment.")  Relying primarily on the reasoning set forth in <u>Hoblock</u> and <u>Davani</u>, the Court, in <u>Fearing</u>, recognized that the Supreme Court's holding in <u>Exxon-Mobil</u> had narrowed the scope of the <u>Rooker/Feldman</u> doctrine in this Circuit.  <u>Id.</u> at *4 (citing <u>Gisslen v. City of</u><u>Crystal</u>, supra at 27-28 for the proposition that, "[b]efore <u>Exxon-Mobil</u>, the [defendant's] argument may have prevailed," but concluding that "<u>Exxon-Mobil</u> * * * requires a different result.").

Considering the overwhelming weight of authority, and the absence of Eighth Circuit precedent, we agree with those Courts which determined that, under <u>Exxon-</u><u>Mobil</u>, the <u>Rooker/Feldman</u> doctrine only applies in those instances where the plaintiff seeks redress for an injury caused by the state-court decision itself.  See, <u>Fearing v.</u><u>City of Lake St. Croix Beach</u>, supra at *4, quoting <u>Davani v. Virginia Department of</u>

Transportation, supra at 719. Nevertheless, the Rooker/Feldman doctrine remains applicable to "[a] claim seeking redress for an injury caused by the state court decision itself -- even if the basis of the claim was not asserted to the state court," since such a claim, "asks the federal district court to conduct an appellate review of the state court decision." Id. Moreover, "a federal suit complains of a injury from a state-court judgment, even if it appears to complain only of a third party's actions, when the third party's actions are produced by the state-court judgment and not simply ratified, acquiesced in, or left unpunished by it." Id. at *5, quoting Hoblock v. Albany County Board of Elections, supra at 88.

The Plaintiff's claims against the Judicial Defendants are predicated on State Court rulings, which ultimately resulted in State Court Judgments that were unfavorable to the Plaintiff. As a result, we can conceive of no circumstance by which the Plaintiff could succeed on the merits of his action against the Judicial Defendants without a reversal of the Judgments that were entered in the State Court proceedings, and which were unfavorable to the Plaintiff.

Moreover, the Plaintiff's alleged injury, in his claims against the Judicial Defendants, stem directly from the State Court Judgments. Specifically, the Plaintiff alleges that the actions of the Judicial Defendants demonstrate a conspiracy to "deny

the plaintiff freedom of speech, access to the courts, due process and equal protection," see, <u>Complaint</u>, at ¶23, and his request for declaratory relief seeks Court recognition that the Defendants violated his Federal Constitutional rights by depriving him "of a full opportunity to be heard, a fair trial and access to the courts, including the appellate courts." <u>Id.</u>, "Nature of the Action," at unnumbered p. 1.   As a consequence, we find that the Plaintiff's alleged injury, in his claims against the Judicial Defendants, was a direct result of the State Court Judgments.   See, <u>Cody v. Severson</u>, 2005 WL 2046009 at *5 (D. S.D., August 23, 2005)(claims against State Court Judges which asserted that the rulings of those Judges deprived him of his Federal constitutional rights were barred by the <u>Rooker/Feldman</u> doctrine).

Furthermore, contrary to the Plaintiff's position, that the <u>Rooker Feldman</u> doctrine does not apply because he is not challenging any State Court Judgments that became final prior to the commencement of his Federal action, the present action was filed on December 29, 2005, which was over five (5) months after the Minnesota Supreme Court had denied the Plaintiff's Petition for Review in the State Court proceedings.   Accordingly, we find that the Plaintiff's claims against the Judicial Defendants are barred by the <u>Rooker/Feldman</u> doctrine.

Since we find that the application of the <u>Rooker/Feldman</u> doctrine deprives the Court of Federal Subject Matter Jurisdiction over the Plaintiff's claims against the Judicial Defendants, we conclude that dismissal is proper as to those Defendants. However, in the interests of completeness, we also address whether the allegations, that are contained in the Plaintiff's Complaint, are sufficient to state a claim upon which relief can be granted. We find that they do not.

2.     <u>The Plaintiff's Section 1983 Claim for Declaratory Relief</u>. To state a claim under Section 1983 for declaratory relief, the plaintiff must allege facts which, if true, would prove "that the defendant has deprived him of a right secured by the 'Constitution and laws of the United States' * * * [and] that the defendant deprived him of this constitutional right 'under color of any statute, ordinance, regulation, custom, or usage of any State or Territory.'" <u>Adickes v. S.H. Kress & Co</u>, 398 U.S. 144, 150 (1970); <u>Title 42 U.S.C. §1983</u>. Section 1983 does not create any independent rights, but is merely a vehicle for the enforcement of other rights which are protected under the Constitution and Federal law. <u>Alsbrook v. City of Maumelle</u>, 184 F.3d 999, 1012 (8th Cir. 1999). Therefore, in order to sufficiently state a Section 1983 claim, a claimant must allege the violation of a right protected by the Constitution, or by Federal law.

Here, the Plaintiff alleges that the Judicial Defendants conspired with the other Defendants to deprive him of his right to free speech, access to the Courts, Equal Protection, and Due Process, under the First and Fourteenth Amendments to the United States Constitution.  The factual predicate for the claimed conspiracy appears to be Judge Boland's reliance on the exchange between the Plaintiff and Judge Hoffman, on September 14, 2004 -- in which Judge Hoffman apprised the Plaintiff that his failure to proceed with the prosecution of his case could result in a dismissal of his claim with prejudice -- in finding that the Plaintiff's appeal to the Minnesota Court of Appeals was frivolous, and in denying the Plaintiff's request for the payment of transcript fees.  Specifically, the Plaintiff alleges that the only means by which Judge Boland could have become aware of the exchange between himself, and Judge Hoffman, would be through improper <u>ex</u> <u>parte</u> communications with Judge Hoffman, Hiveley, Franz, Eggimann, and the "other defense lawyers."  <u>Complaint</u>, at ¶19.

The Plaintiff's conspiracy claim against the Judicial Defendants is also predicated on the authorship of an Affidavit by Judge Hoffman, in which he explained his grant of the Plaintiff's IFP application, as well as Judge Boland's reliance on that Affidavit in denying the Plaintiff's request for the payment of transcript fees.  The Plaintiff further alleges that Judge Toussaint improperly removed himself from the

consideration of the Plaintiff's appeal of the denial of his request for transcripts, despite his familiarity with the Plaintiff's case, and that Judge Dietzen's ruling on that appeal was arbitrary and capricious, in that it contradicted the previous Orders of Judge Toussaint. The Plaintiff notes that Judge Toussaint did not recuse himself, and that the actions of Judge Toussaint and Judge Dietzen demonstrate discrimination on the part of the Minnesota Court of Appeals against pro se litigants.

Unfortunately for the Plaintiff, the factual allegations do not support his conclusory assertions that the Judicial Defendants conspired to deprive him of his Federal Constitutional rights. Notably, the exchange between Judge Hoffman, and the Plaintiff, was part of the Record in the State Court proceeding, and the Plaintiff has not identified any authority that would have precluded Judge Boland from considering the entirety of the Record, in order to determine whether the Plaintiff was entitled to the payment of transcript fees. Therefore, even assuming that Judge Boland learned of that exchange through some ex parte communication, no Federal Constitutional right is implicated. See, Lau v. Meddaugh, 2000 WL 1476577 at *2 (2nd Cir., October 16, 2000), cert. denied, 534 U.S. 833 (2001)(ex parte communication would not give rise to Section 1983 claim where the communication "would not have deprived [the defendant] of a reasonable opportunity to know of his opponent's arguments and to

meet them."); cf., Cooper v. Parrish, 203 F.3d 937, 945-46 (6th Cir. 2000), cert.

denied, 531 U.S. 877 (2000).

Similarly, the Plaintiff has not drawn our attention to any authority, nor has our

independent research disclosed any, which would suggest that a Judge's clarification

of the basis for a previous Order, the consideration of such a clarification by another

Judge in the disposition of a subsequent Motion in the same case, or the assignment

of an appeal to any particular Judge, would constitute a violation of any Federal right.

Therefore, the Plaintiff's Complaint must also be dismissed as to the Judicial

Defendants, insofar as he has sought declaratory relief, for he has failed to state a

claim upon which relief can be granted.[5]

B.     The Brown Defendant's Motion to Dismiss.

The Plaintiff's claims against the Brown Defendants are predicated on his

assertion that Brown conspired with the City Defendants, as well as the Tamarack

Defendants, to further the interests of the Tamarack Defendants -- to the detriment of

the Plaintiff -- and to prevent the Plaintiff from exercising his First and Fourteenth

_____

[5]Ordinarily, we would discuss the application of the doctrine of judicial
immunity, as a bar to Section 1983 claims against State Court Judicial Officers.
However, the Plaintiff's Complaint does not seek money damages from the Judicial
Defendants, and that obviates the need to address that source of immunity.

-37-

Amendment rights.  <u>Complaint</u> at ¶11.  Specifically, he alleges that Brown, who was acting simultaneously as counsel for the Tamarack Defendants, and the City of Kimball, improperly obtained an Order directing the Plaintiff to vacate his lot at the Park; that Brown directed Wagner, Plamann, and Manders, to sign fraudulent leases; that Brown assisted in the removal of the Plaintiff's trailer home from Lot 18; and that Brown transmitted a letter to the Plaintiff, which advised him that the Tamarack Defendants would store his trailer home for ninety (90) days, at which time, it would be sold to the highest bidder.  <u>Id.</u> at ¶¶10-12.

The Plaintiff further alleges that the Brown Defendants violated Minnesota Statutes Section 481.15, Subdivisions 2 and 4, as well as Rule 8.4(d), (g), and (h), Minnesota Rules of Professional Conduct, when Brown allegedly used his simultaneous representation of the Tamarack Defendants, and the City of Kimball, to benefit the Tamarack Defendants.  The Plaintiff contends that the Brown Defendant's actions, along with the alleged acts of Rohloff and the Tamarack Defendants, "in removing the plaintiff's manufactured home from Tamarack Court, Inc., instead of moving it to one of the available lots denied the plaintiff Due Process and Equal Protection of the laws and were completed in a manner of oppression, with malice, deliberate indifference and reckless disregard for the constitutional rights."  <u>Id.</u> at ¶12.

As had the Judicial Defendants, the Brown Defendants urge that application of the Rooker/Feldman doctrine requires a dismissal of the Plaintiff's claims against them, and alternatively, that dismissal is proper on the basis of res judicata. As previously noted, the Rooker/Feldman doctrine is limited to claims where the plaintiff seeks relief for injuries that were caused by the State Court Judgments.

Here, the primary injury, which the Plaintiff claims to have suffered as a result of the alleged conduct of the Brown Defendants, was his eviction from the Park, which was authorized by Order of the State Court. See, Tamarack Court, Inc. v. Milliman, supra. Accordingly, a reasonable argument could be made that, because the alleged conduct was caused by the State Court Judgment, Federal Subject Matter Jurisdiction is lacking. See, Fearing v. City of Lake St. Croix Beach, supra at *5 ("Where a state-court judgment causes the challenged third-party action, any challenge to that third-party action is necessarily the kind of challenge to the state judgment that only the Supreme Court can hear."), quoting Hoblock v. Albany County Board of Elections, supra at 88. However, construed liberally, the Plaintiff's Complaint appears to allege injuries from conduct which falls outside of the Court- authorized eviction, such as the alleged role of Brown in the destruction of the Plaintiff's manufactured home, and

therefore, we find that the Rooker/Feldman doctrine does not apply to the Plaintiff's claim against the Brown Defendants.

While we are satisfied that the Rooker/Feldman doctrine does not preclude the exercise of Federal Court Jurisdiction, the Plaintiff's claims against the Brown Defendants are, nonetheless, barred by the doctrine of res judicata. "'Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" Gurley v. Hunt, 287 F.3d 728, 731 (8th Cir. 2002), quoting Allen v. McCurry, 449 U.S. 90, 94 (1980). "The test applied to determine whether res judicata bars litigation of a claim is: (1) whether the prior judgment was rendered by a court of competent jurisdiction; (2) whether the judgment was a final judgment on the merits, and (3) whether the same cause of action and same parties or their privies were involved in both cases." Id., citing De Llano v. Berglund, 183 F.3d 780, 781 (8th Cir. 1999); see also, Leonard v. Southwestern Bell Corp. Disability Income Plan, 341 F.3d 696, 701 (8th Cir. 2003); Canady v. Allstate Ins. Co., 282 F.3d 1005, 1014 (8th Cir. 2002); Black Clawson Co., Inc. v. Kroenert Corp., 245 F.3d 759, 762 (8th Cir. 2001); Lundquist v. Rice Memorial Hosp., 238 F.3d 975, 977 (8th Cir. 2001).

In determining the scope of preclusion, that a prior Minnesota Judgment will exact, we necessarily look to the governing law of Minnesota.  See, Marrese v. American Academy of Orthopaedic Surgeons, 470 U.S. 373, 375 (1985)(a Federal Court must first consider the law of the State in which a Judgment was rendered when determining the preclusive effect to be accorded that Judgment), reh'g denied, 471 U.S. 1062 (1985).  Under Minnesota law, "[a] judgment on the merits constitutes an absolute bar to a second suit for the same cause of action, and is conclusive between parties and privies, not only as to every other matter which was actually litigated, but also as to every matter which might have been litigated therein."  Dorso Trailer v. American Body & Trailer, 482 N.W.2d 771, 774 (Minn. 1992), quoting Mattsen v. Packman, 358 N.W.2d 48, 49 (Minn. 1984); see also, Sondel v. Northwest Airlines, Inc., 56 F.3d 934, 938 (8th Cir. 1995).  In effect, res judicata "is essentially a finality doctrine which dictates that there be an end to litigation."  Dorso Trailer v. American Body & Trailer, supra at 773-74, citing Federated Mutual Ins. Co. v. Litchfield Prec. Comp., Inc., 456 N.W.2d 434, 438 (Minn. 1990).  Accordingly, it is "well established in Minnesota that a party 'should not be twice vexed for the same cause, and that it is for the public good that there be an end to litigation.'"  Hauser v. Mealey, supra at 807, quoting Shimp v. Sederstrom, 233 N.W.2d 292, 294 (Minn. 1975).

-41-

As is the case with the Plaintiff's Federal Complaint, his State Court Complaint against the Brown Defendants alleged, in pertinent part, that Brown had advised Rohloff that Wagner "had the right to tear apart the manufactured home to get it off his property," and that, by participating in the removal of the trailer home, Brown, as well as the Tamarack Defendants, converted the Plaintiff's trailer home to their own use.  See, Plaintiff's State Complaint, at ¶16.  The Plaintiff further alleged, in the State action, that Brown and Wagner improperly obtained an Order for Restitution of Lot 18, because they failed to provide him with an opportunity to relocate his trailer home to another available lot, id. at ¶18; that Brown had transmitted a letter to the Plaintiff which advised that the Tamarack Defendants would store his trailer home for ninety (90) days, at which time, it would be sold to the highest bidder, id. at ¶¶20; that the Brown Defendants violated Minnesota Statutes Section 481.15, Subdivisions 2 and 4, as well as Rule 8.4(d), (g), and (h), Minnesota Rules of Professional Conduct, when Brown allegedly used his simultaneous representation of the Tamarack Defendants, and the City of Kimball, to benefit the Tamarack Defendant, id. at ¶21; and that the Brown Defendant's actions, along with the alleged actions of Rohloff, and the Tamarack Defendants, "in removing the plaintiff's manufactured home from Tamarack Court, Inc., * * * instead of moving it to one of the available lots denied the plaintiff

due process of law and were completed in a manner of oppression, with malice, deliberate indifference and reckless disregard for the constitutional rights." Id. at ¶22.

Plainly, a comparison of the Plaintiff's allegations in the State Court proceeding, with those that are alleged here, reveal that the Plaintiff is attempting to relitigate his State Court action in this Federal forum. See, Complaint, at ¶¶10-12. Moreover, each of the elements, which is essential to the application of res judicata, are satisfied by the State Court Judgment in favor of the Brown Defendants. Notably, the Plaintiff does not seriously challenge that the State District Court was a Court of competent jurisdiction, or that the parties -- at least so far as the Brown Defendants are concerned -- were the same in both actions. Furthermore, contrary to the Plaintiff's assertion, the allegations in the State Court action need not be identical to those alleged in the Federal action, so long as the claims are the same, which they are.

Lastly, there is no doubt that the Plaintiff had a full and fair opportunity to litigate his claim in the State Court. "The question of whether a party had a full and fair opportunity to litigate a matter generally focuses on 'whether there were significant procedural limitations in the prior proceeding, whether the party had the incentive to litigate fully the issue, or whether effective litigation was limited by the nature or relationship of the parties.'" State v. Joseph, 636 N.W.2d 322, 328 (Minn. 2001),

quoting Sil-Flo, Inc. v. SFHC, Inc., 917 F.2d 1507, 1521 (10th Cir. 1990), citing, in turn, 18 Charles Allen Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure, §4423 (1981 and Supp. 2000). Here, there is no suggestion that the Plaintiff was precluded from participating in the State Court proceedings which resulted in the Judgment favorable to the Brown Defendants; that the Plaintiff was not motivated to fully litigate his claim; or that some relationship existed between the Plaintiff, and the Brown Defendants, which precluded the Plaintiff from fully litigating his claim.

Therefore, finding that the Plaintiff's claims against the Brown Defendants are barred the doctrine of res judicata, we recommend that the Brown Defendant's Motion to Dismiss be granted, and that the Plaintiff's claims against the Brown Defendants be dismissed in their entirety.

C.    The Motion of the City Defendants, Hiveley, and Iverson Reuvers, to Dismiss.

By Order of April 20, 2004, Summary Judgment was granted in the State Court action, as to each of the City Defendants, with the exception of Rohloff, and Robinson.[6] The Plaintiff subsequently filed a Motion for Reconsideration, which was

_____

[6]Robinson was not a party to the State Court action.

-44-

also denied.   Ultimately, the claim against Rohloff was dismissed with prejudice, by
Order of September 20, 2004, after the Plaintiff refused to proceed with the
prosecution of his case at Trial.   The Plaintiff alleges that his decision not to proceed
was necessary to preserve his conspiracy claim -- which had been dismissed at
Summary Judgment -- following the production of documents by Hiveley, at Trial,
which the Plaintiff alleges are the "smoking gun" that would have made Summary
Judgment in the State Court action improper.[7]   However, the Order of the State Court
memorializes that the Plaintiff refused to proceed after an adverse ruling on an
evidentiary issue.

   In addressing the Motion of the City Defendants, Hiveley, and Iverson Reuvers,
we note that different considerations govern the Plaintiff's claims against the City
Defendants, than as to those against Hiveley and Iverson Reuvers.   Notably, each of

---

[7]The Plaintiff's Complaint does not describe with any particularity the
documents that were allegedly withheld.   However, attached to the Plaintiff's
Memorandum in Opposition to the City Defendants', Hiveley's, and Iverson Reuvers',
Motion to Dismiss are minutes from a Kimball City Council Meeting on June 7, 1999,
and Rohloff's Daily Log Report for June 11, 1999.   The City Council Meeting minutes
reflect that the Council toured the City, including the Park, where they observed
"noxious weeds, debris, no yards, dirt road, vacant mobile homes unfit for habitation,
occupied mobile homes unfit for habitation, no speed signs, just a general all around
mess."   Rohloff's officer's daily log report reflects that Rohloff went to the Park on
June 11, 1999, and that he met with Wagner.

the City Defendants, with the exception of Robinson, were named as defendants in the State Court action, while Hiveley and Iverson Reuvers were not.   Moreover, the Plaintiff's alleged injury in his claims against the City Defendants appears to be predicated on the allegedly unlawful searches that were performed by Rohloff, and the City Council, as well as the alleged harassment, and eviction of the Plaintiff from Lot 18, following the decision to construct a storm shelter for the Park.   However, the Plaintiff's alleged injury in his claims against Hiveley, and Iverson Reuvers, are premised on their representation of the City Defendants in the State Court action -- and specifically, their alleged conspiracy with the other attorney's, who participated in the State Court action, as well as with the Judicial Defendants, to deprive the Plaintiff of his Federal Constitutional rights.

Given these showings, we conclude that the Plaintiff's claims against the City Defendants are barred by res judicata, while the Plaintiff's claims against Hiveley, and Iverson Reuvers, are barred by the Rooker/Feldman doctrine.   Notably, the Plaintiff's claims against Hiveley and Iverson Reuvers concern their representation of the City Defendants in the State Court action, and the alleged impropriety of Hiveley's conduct there.   Moreover, the only apparent injury to the Plaintiff, which is alleged to have been caused by Hiveley's asserted misconduct, was the deprivation of the Plaintiff's right

-46-

of free speech, access to the Courts, due process and equal protection, which all

resulted from the State Court Judgment.   As a result, the <u>Rooker/ Feldman</u> doctrine

precludes the Court from exercising Federal Court Jurisdiction over the Plaintiff's

claims against Hiveley and Iverson Reuvers.[8]   See, <u>Kafele v. Lerner, Sampson &</u>

---

[8]As his pleading makes plain, the Plaintiff has alleged claims against most, if not all, of the attorneys who represented opposing parties, on some notion that, in doing so, they must have engaged in a conspiracy to deny him his Federal Constitutional rights.   The United States Supreme Court long ago rejected the argument "that a private party's mere invocation of state legal procedures constitutes joint participation or conspiracy with state officials satisfying the §1983 requirement of action under color of law."   <u>Lugar v. Edmondson Oil Co.</u>, 457 U.S. 922, 939 n. 21 (1982).   As a consequence, where, as here, the plaintiff only offers conclusory allegations of a conspiracy against an attorney for another party, the claim is adjudged to have been insufficiently pled, and subject to dismissal.   See, <u>Miller v. Compton</u>, 122 F.3d 1094, 1098 (8th Cir. 1997); <u>Brown v. Delmuro</u>, 163 F.3d 601, 1998 WL 547864 at *1 (8th Cir., August 28, 1998)[Table Decision].

Here, as to Hiveley, Iverson Reuvers, Shadduck, Young & Brown, Brown, Franz, Neils, Franz & Chirhart, Eggimann, Weiss, Stohl, and Meagher & Geer -- all private attorneys, or private law firms -- the Plaintiff has failed to plead that there was a mutual understanding, or a meeting of the minds, between the referenced lawyers, and a State action, supported by specific evidence.   See, <u>Mershon v. Beasely</u>, 994 F.2d 449, 451 (8th Cir. 1993), cert. denied, 510 U.S. 111 (1994).   Indeed, all of the Plaintiff's conspiracy claims are conclusory -- whether as alleged against lawyers, or generally -- and therefore, they fail to state a cause of action.   See, <u>Smithson v. Aldrich</u>, 235 F.3d 1058, 1063 (8th Cir. 2001), citing <u>Rogers v. Bruntrager</u>, 841 F.2d 853, 856 (8th Cir. 1988), for the proposition that a "conspiracy claim requires allegations of specific facts showing a 'meeting of minds' among alleged conspirators;" see also, <u>Snelling v. Westhoff</u>, 972 F.2d 199, 200-01 (8th Cir. 1992),

(continued...)

-47-

Rothfuss, L.P.A., 161 Fed. Appx. 487, 488-89 (6th Cir., December 22, 2005)(Federal claims against attorneys who represented co-defendant in State Court foreclosure action were inextricably intertwined with the claims brought in State Court).

Unlike the claims against Hiveley and Iverson Reuvers, the Rooker/Feldman doctrine does not bar Plaintiff's claims against the City Defendants, since the Plaintiff alleged injuries, in his claim against those Defendants, were not caused by the State Court Judgment.  Instead, the Plaintiff seeks redress for injuries that were caused by the alleged searches of the Plaintiff's property, which were performed by Rohloff and the Kimball City Council, the alleged harassment of the Plaintiff, which followed the decision to construct a storm shelter on Lot 18, and the subsequent eviction of the Plaintiff from Lot 18.  However, as was the case with the Plaintiff's claims against the Brown Defendants, we find that the Plaintiff's claims against the City Defendants are barred by the doctrine of res judicata.

---

[8](...continued)
cert. denied, 506 U.S. 1053 (1993); Cabal v. United States Dep't of Justice, 980 F.2d 734, 1992 WL 336447 at *2 (8th Cir. 1992)[Table Decision], cert. denied, 510 U.S. 831 (1993); Boone v. PCL Construction Services, Inc., 2005 WL 1843354 at *7 (D. Minn., August 2, 2005).

We have already detailed the elements required for the application of res judicata, and we find that the City Defendants have satisfied those elements here.  In his State Court Complaint, the Plaintiff alleged that the City of Kimball had an official policy or custom of allowing Rohloff to conduct unlawful property inspections, pursuant to a City Ordinance against the accumulation of waste, and that he expressed his concerns about those searches to the Kimball City Council, but that the Council failed to act.  Plaintiff's State Complaint, at ¶¶5 and 6.  The Plaintiff further alleged that he transmitted a letter to the Kimball City Council, on October 31, 1999, in which he related incidents where he had been harassed by Rohloff, and that, in response, he received a letter from the Kimball City Clerk, which included a form, and which directed him to complete the form, in the event that he wished to file a complaint against Rohloff.  Id. at ¶8.

The Plaintiff's State Court Complaint also contained allegations that members of the Kimball City Council, and Rohloff, began to meet with Wagner, and County officials, concerning the construction of a storm shelter in the Park; that he was harassed by Wagner and Rohloff, following the decision to construct the storm shelter, id. at ¶9; that, on May 31, 2002, Rohloff served the plaintiff with notice of termination of tenancy, as a "favor" to Wagner, id. at ¶11; that Rohloff failed to take

action on a complaint that was referred to him by the Stearns County Sheriff's Department, in which the Plaintiff reported that Wagner had sprayed expanding foam insulation in his septic tank, id. at ¶12; that, on October 15, 2002, Rohloff served the Plaintiff with a Writ of Restitution as a "favor" to Wagner and Brown, id. at ¶15; and that Rohloff failed to adequately respond to his report that his manufactured home was being torn apart by Wagner. Id. at ¶16.[9]

The allegations against the City Defendants in the Plaintiff's Federal Complaint are substantially the same as those which we have described in his State Court Complaint, see, Complaint, at ¶¶5-10, and the Plaintiff has alleged violations of Section 1983 in both the State and Federal actions. Moreover, as we previously recognized, there is no doubt that the Plaintiff had a full and fair opportunity to litigate his claim in the State Court, since there is no suggestion that the Plaintiff was precluded from participating in the State Court proceedings which resulted in the Judgment in favor of the City Defendants; that the Plaintiff was somehow not motivated to fully litigate his claim; or that some relationship existed between the

---

[9]The Plaintiff's State Court Complaint contains a number of additional factual allegations against Rohloff, as well as the other City Defendants. However, for the purposes of this Motion, we limit our discussion of the State Court Complaint to those allegations which also appear in the Plaintiff's Federal Complaint.

Plaintiff and the City Defendants which precluded the Plaintiff from fully litigating his

claim.  Accordingly, we find that the Plaintiff's claims against the City Defendants are

barred by the doctrine of <u>res judicata</u>.[10]

Unlike the other City Defendants, Robinson was not a party to the State Court

action.  Nevertheless, <u>res judicata</u> may still bar the Plaintiff's claims against Robinson

if she was in privity with the City of Kimball, as well as the other City Defendants.

"'Privity' expresses the idea that as to certain matters and circumstances, people who

are not parties to an action, but who have interests affected by the judgment as to

certain issues in the action are treated as if they were parties."  <u>SMA Services, Inc. v.</u>

<u>Weaver</u>, 632 N.W.2d 770, 774 (Minn. App. 2001), citing <u>Johnson v. Hunter</u>, 435

---

[10]While the Judgment in favor of Rohloff was entered after the Plaintiff's refusal to proceed with the prosecution of his action, the State Court explicitly dismissed the Plaintiff's claims against Rohloff "with prejudice."  See, <u>Garry Aff.</u>, at Exh. F.  As such, under Minnesota law, <u>res judicata</u> applies to the Plaintiff's claims against Rohloff.  Specifically, Rule 41.02(c), Minnesota Rules of Civil Procedure, provides that, "[u]nless the court specifies otherwise in its order, a dismissal pursuant to this rule and any dismissal not provided for in this rule or in Rule 41.01, other than a dismissal for lack of jurisdiction, for forum non conveniens, or for failure to join a party indispensable pursuant to Rule 19, operates as an adjudication upon the merits."  See, <u>Johnson v. Hunter</u>, 447 N.W.2d 871, 873 (Minn. 1989)("Even though a case dismissed with prejudice for lack of prosecution * * * is disposed of on nonsubstantive grounds, * * * such a dismissal nonetheless 'operates as an adjudication on the merits,' * * * and thus can form the basis for res judicata.") [internal citations omitted].

N.W.2d 821, 823 (Minn. App. 1989), reversed on other grounds, 447 N.W.2d 871, 876 (Minn. 1989).  "Privies are those so connected with one another in the law as to be identified with each other in interest."  Id.

Privity generally exists between a government official and the governmental entity, in an official capacity claim.  See, Headley v. Bacon, 828 F.2d 1272, 1279 (8th Cir. 1987)("Litigation involving the government is generally binding with respect to government officials who are sued in their official capacities."); see also, Micklus v. Greer, 705 F.2d 314, 317 (8th Cir. 1983)("A plaintiff may not sue a succession of state employees on the same claim solely on the ground that each employee is not 'identical' to the previously sued employee.").  In contrast, where the claim is being brought against the official in his individual capacity, privity does not generally exist with the government.  See, Conner v. Reinhard, 847 F.2d 384, 394 (7th Cir. 1988), cert. denied, 488 U.S. 856 (1988); see also, Headley v. Bacon, supra at 1279.  However, "[w]here there is a sufficient identity of interest between a government official and the governmental entity or where the inclusion of the personal capacity claim amounts to nothing more than a pleading artifice, privity may be found to exist regardless of the fact that the official has been sued in his personal capacity."  Fleming

v. City of Detroit, 2006 WL 1072013 at *5 (E.D. Mich., April 24, 2006), citing

Williams v. City of Allentown, 25 F. Supp.2d 599, 604 (E.D. Pa. 1998).

Here, the Plaintiff has sued Robinson in both her individual and official

capacities. Nevertheless, we find that Robinson was a privy of the City of Kimball

and, as a result, the Plaintiff's claims against her are barred by res judicata. In so

holding, we are closely guided by the analysis of our Court of Appeals in Ruple v.

City of Vermillion, 714 F.2d 860 (8th Cir. 1983). The plaintiff, in Ruple, was

terminated from her employment with the City of Vermillion, South Dakota, and she

subsequently commenced a State Court action against the City, and the City Manager,

in which she alleged breach of contract, and defamation claims. Id. at 861. Her action

was dismissed by the State Court, and the plaintiff commenced an action in Federal

Court. In the Federal action, the plaintiff alleged violations of Section 1983, against

the City, the City Manager, the City Mayor, and four members of the City Council.

Id. at 862. After noting the similarities between the plaintiff's State Court action, and

her Federal action, the Court concluded that the plaintiff's claims against each of the

defendants were barred by the doctrine of res judicata. In so concluding, the Court

observed, as follows:

Plaintiff also urges that she should benefit from the fact that some of the parties in the present case were not parties in the state court. In the state suit, plaintiff named as defendants the City and the City Manager. Here, she has added the Mayor and four members of the City Council. Again, there is a short answer to this contention. The newly named defendants are in privity with those who were defendants in the state court. In other words, they are so closely related to the state-court defendants, and their interests are so nearly identical, that it is fair to treat them as the same parties for purposes of determining the preclusive effect of the state-court judgment. Any other rule would enable plaintiff to avoid the doctrine of res judicata by the simple expedient of not naming all possible defendants in her first action.

Id.

The Court did not make any distinction between official and individual capacity claims, and the caption reflects that, at least as to the Mayor, the plaintiff had alleged both an official and individual capacity claim.  Other Courts have adopted similar reasoning in finding privity between government officials, who are sued in their individual capacities, and governmental entities.  See, Williams v. City of Allentown, supra at 604 (finding privity where "[a]ny other holding would reward litigants who failed, intentionally or not, to include all relevant parties in an action and would permit two (or possibly many more) attempts to try the same cause of action.").

The only specific conduct in which Robinson is alleged to have engaged was her transmission of a form to the Plaintiff, and her direction that the Plaintiff complete the form in the event that he wished to file a complaint against Rohloff. <u>Complaint</u>, at ¶5. From this conduct, the Plaintiff alleges that Robinson was part of a conspiracy to deprive him of his constitutional rights. The same conduct was alleged in the Plaintiff's State Court Complaint, although Robinson was not named as a party. Considering the State Court's determination, that those allegations were insufficient to support a Section 1983 conspiracy claim, the Plaintiff's claim against Robinson is essentially an attempt to relitigate the same cause of action in the Federal forum. Moreover, considering the nature of Robinson's alleged conduct, we find that the claims against Robinson are "so connected" to the previously adjudicated claims against the City, that the parties may properly be considered as the same parties in interest. Therefore, we find that Robinson was in privy with the City, and that the Plaintiff's claims against her are also barred by <u>res judicata</u>.

In sum, we find that the Plaintiff's claims against Hiveley, and Iverson Reuvers, are barred by the <u>Rooker/Feldman</u> doctrine, while the claims against the City Defendants are barred by the doctrine of <u>res judicata</u>. Therefore, we recommend that

the Motion of the City Defendants, Hiveley, and Iverson Reuvers, to Dismiss be granted in its entirety.

D.      The County Defendants' Motion to Dismiss.

The County Defendants were not involved in the State Court litigation, and their Motion to Dismiss is predicated entirely on the merits of the Plaintiff's claims against them.  Specifically, the County Defendants contend that the Plaintiff's Complaint fails to state a claim upon which relief can be granted.  We agree.

Outside of the wholly conclusory allegations, that the County Defendants participated in a conspiracy to deprive the Plaintiff of his constitutional rights, the only conduct alleged, on the part of Rushmeyer, is his alleged preparation of "a capricious and arbitrary written document allowing Tamarack Court, Inc., and Dale Wagner * * * to abandon the septic system," and his act of testifying at the eviction proceedings. Complaint at ¶4; see also, footnote 8, supra.  Similarly, the only specific conduct alleged against Bauman is the fact that she met with the Tamarack Defendants concerning the construction of a storm shelter, and that she testified at the eviction proceedings.  As to Heinen, the only conduct alleged is his investigation of the conduct of Wagner, his alleged failure to stop Wagner from committing criminal

offenses, and his referral of a complaint by the Plaintiff to the Kimball City Police Department.

None of the alleged conduct gives rise to a Section 1983 claim, or would otherwise support the Plaintiff's conspiracy claims.   Based on the Plaintiff's arguments, it appears that he fundamentally misunderstands the requirements for sufficiently pleading a cause of action.   Specifically, the Plaintiff's conclusory allegations that the Defendants engaged in a conspiracy, that there was a "meeting of the minds," and that the Defendants violated his constitutional rights, are insufficient to state a cause of action in the absence of factual allegations to support those claims. See, Footnote 8, supra.  The Plaintiff's Complaint against the County Defendants is woefully deficient in that it fails to allege factual circumstances that would support his conclusion that the County Defendants were involved in a conspiracy, or that they otherwise violated his Federal Constitutional rights.  Accordingly, we recommend that the County Defendant's Motion to Dismiss be granted, and that the claims against them be dismissed in their entirety.

E.     The Meagher Defendants' Motion to Dismiss.

The only paragraph, that contains any substantive allegations against the Meagher Defendants, alleges that Eggimann, Weiss, and Strohl, conspired with Hiveley

and Franz, and "the other defendants," to withhold material evidence from the Plaintiff, and that they conspired with the Judicial Defendants to deprive the Plaintiff of his Federal constitutional right to freedom of speech, access to the Courts, due process, and equal protection under the law.  The Plaintiff further alleges that "[t]hese acts were discriminatory in nature, designed to damage or harm the plaintiff and were completed in a manner of oppression, with malice, and in deliberate indifference and reckless disregard for the constitutional rights of the plaintiff and caused the plaintiff additional costs and additional litigation."  <u>Complaint</u>, at ¶23.

While the <u>Rooker/Feldman</u> doctrine was not raised by the Meagher Defendants, its application deprives the Court of Federal Subject Matter Jurisdiction over the Plaintiff's claims against them.  Similar to the claims against Hiveley and Iverson Reuvers, the Plaintiff's claims against the Meagher Defendants are solely based on their representation of the Brown Defendants in the State Court action, and therefore, they allege an injury which was caused by the State Court Judgment itself.  See, <u>Kafele v. Lerner, Sampson & Rothfuss, L.P.A.</u>, supra at 488-89; see also, <u>Footnote 8</u>, supra. Accordingly, the Plaintiff's claims against the Meagher Defendants must be dismissed, under Rule 12(b)(1), for a lack of  Federal Subject Matter Jurisdiction

Moreover, the factual allegations, that are contained in the Complaint, are clearly insufficient to state a Section 1983 claim against the Meagher Defendants.  Again, the fatal defect in the Plaintiff's Complaint is that he has failed to allege facts that would establish a conspiracy among the Meagher Defendants, as well as the other Defendants, to violate the Plaintiff's constitutional rights.  See, <u>Footnote 8</u>, supra.  Rather, the only identifiable conduct by the Meagher Defendants, as alleged in the Complaint, was their representation of the Brown Defendants in the prior litigation.  Such conduct does not give rise to a Section 1983 conspiracy claim, and therefore, dismissal of the Plaintiff's claims against the Meagher Defendants is also required, on the merits.  Accordingly, we recommend that the Meagher Defendants' Motion to Dismiss be granted, and that the claims against them be dismissed in their entirety.

NOW, THEREFORE, It is –

RECOMMENDED:

1.     That the Motion of the Judicial Defendants to Dismiss [Docket No. 6] be granted.

2.     That the Motion of the Brown Defendants to Dismiss [Docket No. 23] be granted.

3.      That the Motion of the City Defendants, Iverson Reuvers and Jason Hiveley to Dismiss  [Docket No. 34] be granted.

4.      That the Motion of the County Defendants to Dismiss [Docket No. 30] be granted.

5.      That the Motion of the Meagher Defendants to Dismiss [Docket No. 11] be granted.

Dated:  August 3, 2006                              s/Raymond  L. Erickson

                                                    Raymond L. Erickson
                                                    CHIEF U.S. MAGISTRATE JUDGE

**NOTICE**

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than August 18, 2006,** a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than August 18, 2006,** unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.